The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HENDRICKS & LEWIS PLLC, a Washington professional limited liability company,<br><br>Petitioner,<br><br>vs.<br><br>GEORGE CLINTON, an individual,<br><br>Respondent. | Case No. C10-0253-JCC<br><br>ORDER |

This matter comes before the Court on Hendricks & Lewis PLLC's petition for an order confirming arbitration award and for judgment thereon (Dkt. No. 1), George Clinton's response (Dkt. No. 17), Petitioner's reply (Dkt. No. 20), Respondent's surreply (Dkt. No. 23), Respondent's motion to vacate arbitration award (Dkt. No. 19), Petitioner's response (Dkt. No. 24), and Respondent's reply. (Dkt. No. 27.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS H&L's petition and DENIES Clinton's motion for the reasons explained herein.

**I.       BACKGROUND**

This case concerns attorney fees allegedly owed to H&L by Mr. Clinton. H&L provided legal services to Clinton, representing him in several copyright-related cases, four of which took place in California federal district courts. (Pet. 2–3 (Dkt. No. 1).) The remaining cases took place in Michigan, Tennessee, and Florida. (*Id.*) The attorney fee agreement provided that any dispute

1   between the parties would be subject to binding arbitration provided by the American Arbitration
2   Association ("AAA"). (*Id.*) A dispute arose, and H&L filed a demand for arbitration with the
3   AAA on March 3, 2009. (*Id.*) On March 9, 2009, H&L sent Clinton a demand letter for the
4   payment of fees and a copy of the arbitration demand. (Resp.'s Resp. 9 (Dkt. No. 17).) The AAA
5   set a hearing date of November 2009, and granted H&L's request that the hearing take place in
6   Seattle, Washington. (Pet. 3 (Dkt. No. 1).)

7        Clinton's participation in the arbitration process was limited. He did not file a response
8   to the arbitration demand. (*Id.*) The arbitration panel held three telephonic hearings, two of
9   which were attended by representatives of Clinton who stated that they had no authority to speak
10  for him. (*Id.* at 3–4.) On November 9, 2009, Clinton filed a motion to postpone, on the grounds
11  that his management had failed to advise him of the existence and significance of the hearing.
12  (Resp.'s Resp. 11 (Dkt. No. 17).) The arbitration panel denied the motion. (*Id.*) The hearing
13  occurred on November 11, 2009, and neither Mr. Clinton nor his representatives participated.
14  (Pet. 4 (Dkt. No. 1).) On December 9, 2009, the arbitration panel issued a partial award of
15  $1,519,712.24 in favor of H&L. (*Id.*)

16       On February 1, 2010, an attorney for Clinton sent a letter to the arbitration panel,
17  objecting that the proceeding had not been in compliance with California's Mandatory Fee
18  Arbitration Act ("MFAA"), Cal. Bus. & Prof. Code § 6200 *et seq.* (Resp.'s Resp. 10 (Dkt. No.
19  17).) On February 4, 2010, the arbitration panel confirmed the earlier amount in a final award,
20  awarded H&L an additional $155,927.08 in attorney fees and costs for the arbitration
21  proceeding, and issued a letter describing Clinton's objections as untimely. (*Id.* at 11; Dkt. No. 1
22  at 4–5.)

23       H&L now seeks to judicially confirm the award under the Federal Arbitration Act ("the
24  FAA") while Clinton seeks to vacate the award on various grounds, all centered on H&L's
25  failure to adhere to the strictures of the MFAA.
26  //
27
28

ORDER - 2
CASE NO. C10-0253-JCC

## II. ANALYSIS

### A. Choice of Law

The first question the Court must answer is whether to apply Washington or California law to the dispute. Under Washington law, if the parties have not agreed on the governing law, "the basic rule is that the validity and effect of a contract are governed by the local law of the state which has the most significant relationship to the contract." *Baffin Land Corp. v. Monticello Motor Inn*, 425 P.2d 623, 627 (Wash. 1967). Among the factors for a court to consider when deciding which state has the "most significant relationship" to a contract are the situs of the subject matter of the contract and the jurisdiction where the work is performed. *Nelson v. Kaanapali Properties*, 578 P.2d 1319, 1321 (Wash. Ct. App. 1978). In this case, H&L argues that it is a Washington firm, and that the legal work in question was, for the most part, performed in Washington. (Pet. Reply 7–8 (Dkt. No. 20).) Clinton claims that H&L was admitted *pro hac vice* to provide legal work for California cases, and that California law should therefore apply to this dispute. (Resp.'s Resp. 12–15 (Dkt. No. 17).) The Court agrees. Given the centrality of California to the work that H&L performed, the Court finds that California law should govern.

### B. Preemption

Having applied California law to this dispute, the Court must determine the relationship between federal and state law. On the federal side, the FAA governs arbitration agreements in contracts involving interstate commerce, and provides that arbitration provisions are "valid, irrevocable, and enforceable."[1] 9 U.S.C. § 2; *see Volt Info. Services, Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). Although the purpose of the FAA is to ensure uniform validity of arbitration agreements throughout the country, "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt*, 489 at 477. In fact, Section 2 of the FAA creates an exception whereby certain state laws can trump the Act: arbitration agreements can be invalidated by state law for

---

[1] The parties do not dispute that the fee agreement "involved" commerce, and should therefore be governed by the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001).

ORDER - 3
CASE NO. C10-0253-JCC

"such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Clinton argues that the MFAA is such a law.

California's MFAA provides a low cost, no fee, and non-binding arbitration forum administered by the local bar association to decide attorney-fee disputes. Cal. Bus. & Prof. Code § 6200. The MFAA requires that in the event of such a dispute, an attorney notify the client of its option of the non-binding arbitration. *Id.* at § 6201. An attorney's failure to give his client notice of its option of MFAA arbitration when a fee dispute arises constitutes a basis for dismissal of the action to recover fees. *Id.*

The primary dispute between the parties is whether the arbitration panel's award should be, as the FAA decrees, enforceable as the outcome of a valid arbitration agreement, or, as the MFAA dictates, dismissed for failure to observe notice requirements.

H&L argues that the FAA preempts all state law that applies only to a narrow category of contracts, such as fee agreements. (Pet. Resp. 7–8 (Dkt. No. 24).) The only state laws that take priority over the FAA's guarantee of enforceability are those that are "generally applicable" or apply to "any contract". *Bradley v. Harris Research*, 275 F.3d 884, 890 (9th Cir. Cal. 2001). The *Bradley* court found that the California statute in question "applies only to forum selection clauses and only to franchise agreements; it therefore does not apply to 'any contract.'" *Id.* Because it did not apply to "any contract," the court held, the statute was preempted by the FAA. In this case, H&L argues that MFAA creates a separate and distinct arbitration procedure that does not apply to contracts generally, but only to attorney-client fee disputes. (Pet. Resp. 7–8 (Dkt. No. 24).) Under *Bradley*, H&L argues, state laws that apply to limited sets of transactions and not to "any contract" are preempted by the FAA. (*Id.*)

Clinton argues that H&L has set the bar for preemption far too low. The only state laws that should be preempted by the FAA, Clinton argues, are those that *conflict* with the FAA. (Resp. Reply 7 (Dkt. No. 27).) Clinton points to *Volt*, where the Supreme Court held that state law was preempted by the FAA only "to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" 489 U.S. at 474. The MFAA, Clinton argues, serves only

ORDER - 4
CASE NO. C10-0253-JCC

to further the objectives of the FAA—resolution of disputes through arbitration. (Resp. Reply 6–7 (Dkt. No. 27).) Because there is no conflict, Clinton claims, there should be no preemption. (*Id.* at 7.)

The Court disagrees with Clinton's statement of the law. *Bradley* found that *Doctor's Associates* expanded the earlier holding of *Volt*:

> "[the state law] is not a generally applicable contract defense that applies to any contract, but only to forum selection clauses in franchise agreements. We therefore hold that, under the reasoning of *Doctor's Assocs.* and [*Perry v. Thomas*, 482 U.S. 483 (1987)], as well as the language of 9 U.S.C. § 2 itself, [the law] is preempted by the FAA."

*Bradley*, 275 F.3d at 892. In accordance with this precedent, the primary criterion for a determination of preemption in this Circuit is not whether a state law conflicts with the FAA, but whether the law applies to a limited set of contracts. The MFAA applies to a limited group of contracts, and it is preempted by the FAA.

Clinton makes several arguments against the validity of the arbitration award, all premised on the applicability of the MFAA. (Resp. Mot. (Dkt. No. 19).) Because the Court disagrees with this premise, Clinton's arguments are dismissed.

### III.   CONCLUSION

For the foregoing reasons, H&L's petition is GRANTED. (Dkt. No. 1.) Clinton's motion is DENIED. (Dkt. No. 19.) The Clerk is DIRECTED to CLOSE the case.

DATED this 27th day of May, 2010.

*/s/ John C. Coughenour*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER - 5
CASE NO. C10-0253-JCC